(C. D. 641)

JOY MANUFACTURING CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 3, 1942)

*Tompkins & Tompkins* (*J. Stuart Tompkins* and *Allerton deC. Tompkins* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon, Dorothy C. Bennett*, and *Joseph A. Howard*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are suits against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on particular importations of coal cutter machines and parts thereof. Duty was levied thereon at the rate of 35 per centum ad valorem under paragraph 353 of the Tariff Act of 1930 as articles having as an essential feature an electrical element or device, and parts thereof. It is claimed that said merchandise is properly dutiable at but 27½ per centum ad valorem under paragraph 372 of said act as machines and parts thereof not specially provided for.

A leaflet containing photographs of one of said machines and diagrams of the same was admitted in evidence as exhibit 1, and pages 16 and 17 of a booklet entitled "M & C Arcwall & Shearing Coalcutters & Joy Loaders, Booklet No. 5b," published by the foreign manufacturer, were admitted in evidence as collective exhibit A.

In addition to said exhibits, the plaintiff, at the first hearing held at Pittsburgh, Pa., on December 2, 1940 before Brown, Judge, offered in evidence the testimony of a single witness, John Merck, chief engineer of the plaintiff-corporation, who testified in part as follows:

Q. Am I correct in my understanding that as limited, the protests now relate exclusively to these parts of either the coal cutting machine, number 4712, or the other coal cutting machine, number 4784; is that right?—A. Yes.

Q. How large are these machines, or how heavy?—A. They weigh about 10 tons.

Q. And about how large are they?—A. They are about 45 inches wide, and about 15 feet long, including the cutting bar.

Q. What is their function? What do they do?—A. To undercut and shear coal in coal mines.

Q. Have you installed or supervised the installation of these machines in your factory?—A. Yes, I have.

Q. Are you familiar with their construction and their parts?—A. Yes.

\* \* \* \* \* \* \*

Q. Have you a picture or illustration of these coal cutting machines?—A. Yes.

Q. Does this picture which you now hand me, which one, if either of those machines does this picture represent?—A. This is the electric type.

Q. That is number what?—A. That is number 4712.

Q. How, if at all, does the 4784 differ from the 4712?—A. Only in the electric motor.

Q. How does the electric motor which came with 4784 differ from the electric motor which was with 4712?—A. 4712 is d. c., and 4784 is a. c. electric current.

\* \* \* \* \* \* \*

By Mr. FITZGIBBON.

Q. What is on the back of it; just another picture of the same machine?—A Yes, it is the machine in its low position.

Q. One for undercutting, and one for overcutting?—A. Yes.

\* \* \* \* \* \* \*

Q. And the picture on the reverse side is in bottom cutting position?—A. Correct.

\* \* \* \* \* \* \*

By Mr. Tompkins.

Q. By what power or powers can these machines be operated?—A. Either by electric motors or air turbines.

Q. Have you ever seen them operated or tested by the air turbine motors?—A. Yes, I have.

Q. Have you any pamphlet or illustration to corroborate what you say that these machines may be operated either by electric motors or by air turbine motors?—A. Yes, I have.

Q. Please produce it.—A. (Witness produces pamphlet. Collective Illustrative Exhibit A, page 16 of which illustrates a. c. electric motor and page 17 a compressed air turbine.)

\*  \*  \*  \*  \*  \*  \*

By Mr. FitzGibbon.

Q. There is no picture of a d. c. motor here?—A. There is no picture of a d. c. here.

Q. Just a picture of an a. c. electric motor, and a picture of an air compressor motor?—A. Yes.

\*  \*  \*  \*  \*  \*  \*

By Mr. Tompkins.

Q. Are there any electrical elements or devices in either one of these machines required for their operation, other than the electrical motors and their controls?—A. No.

\*  \*  \*  \*  \*  \*  \*

On cross-examination the witness testified in part as follows:

X Q. There are two types of these coal cutting machines; one an electric type, and one an air type?—A. Yes, in the electric type you have two, the a. c. and the d. c.

X Q. And in the air compressor type you only have one?—A. That is right.

X Q. And these imported were the electric type?—A. Yes.

X Q. And they were imported, one with an a. c. motor, and one with a d. c. motor?—A. Yes.

X Q. And no complete turbine motor came with it?—A. No.

On redirect examination the witness testified in part as follows:

R Q. Assuming that you desire to change your motor power from electric, either d. c. or a. c., to the air turbine power, what changes, if any, would you make in these machines?—A. Remove the electric motors and put the air turbine in its place.

R Q. Otherwise, are the mechanical parts of these machines identical?—A. They are interchangeable.

At the close of the first hearing, the case was submitted by both sides and time allowed counsel for both sides for the filing of briefs. But subsequently, on March 27, 1941, the submission was set aside and the case restored to the Pittsburgh docket.

At the second hearing, held at Pittsburgh, on May 8, 1941, the plaintiff's witness, John Merck, was recalled and testified in part as follows:

Q. Do you know precisely what has to be done to change the motive power in the imported coal cutting machines involved in this suit from electricity to compressed air?—A. Yes.

\*  \*  \*  \*  \*  \*  \*

Q. And you say you observed, several times, the interchange of a turbine motor for compressed air in place of an electric motor?—A. Yes.

Q. Please explain just how that change of motive power from the electric motor to turbine motor for compressed air is accomplished?—A. All that is required is to remove the electric motor and put the compressed air turbine in its place.

  *   *   *   *  · *   *   *

Q. Are these two motors, Mr. Merck, identical in size?—A. They are identical in size inasmuch as they fit into the same place and space.

Q. In these machines?—A. Yes.

By Judge DALLINGER.

Q. Do I understand that you simply put one in place of the other?—A. Yes.

Q. Don't you have to make some changes in connections?—A. It is equipped with electric and compressed air connections.

  *   *   *   *   *   *   *

By Mr. TOMPKINS.

Q. Will you please explain, briefly to the Court, just what those connections are, and what they consist of?—A. In the case of the electric motor you will have electric wires which are necessary to connect up to the cable through which you take your power.

  *   *   *   *   *   *   *

Q. With reference to the turbine motor for compressed air, what is the connection for that?—A. Then you would be required to have a valve, an air valve.

  *   *   *   *   *   *   *

Q. Except for the boxed electric motor, the boxed turbine motor for compressed air, and the electric or the air connections that you have mentioned, is any change required in the machines themselves?—A. No.

Q. In other words, the other parts of the coal cutting machine are identical?—A. Yes.

  *   *   *   *   *   *   *

By Judge DALLINGER.

Q. Did I understand you to say that the machine, as imported, in imported condition, was equipped to meet or permit operation either by electric or by compressed air?—A. It can be.

Q. I said was it equipped or do you have to put some wiring in the machine after it is imported? Don't you understand what I mean? I understood you to say in the first place that the machines are equipped to be operated by either, and that the two motors were approximately, or almost, identical, the same size, and that you simply put one in place of the other.—A. It has a place for wire and also a place for a valve for the air compressor.

Q. Now how long does it take to adapt this machine from one to the other?—A. That I could not state definitely, Your Honor.

Q. You have never done it yourself?—A. No.

Q. And you don't know how much it costs?—A. No, I don't know how much it costs.

  *   *   *   *   *   *   *

On cross-examination the witness testified in part as follows:

By Mrs. BENNETT.

X Q. Mr. Witness, this coal cutting machine, at the time of importation, was wired for use of an electric motor, was it not?—A. Yes.

X Q. And the electric motor was built into the machine at the time of importation, was it not?—A. Yes.

  *   *   *   *   *   *   *

X Q. Did you use it in the coal mines, these particular machines, with the electric motors that were imported with them?—A. Yes

\*        \*        \*        \*        \*        \*

X Q. What is the horsepower of this motor, the motor in this machine?—A. about 60 horsepower.

X Q. Now, Mr. Witness, for a 60 horsepower motor, what horsepower air compressor is necessary to operate an air turbine motor which would furnish the same horsepower of this electrical motor imported with this machine?—A. I can not answer that offhand.

\*        \*        \*        \*        \*        \*        \*

X Q. How many cubic feet per inch of free air are required for each horse-power developed by a motor?—A. I do not know at this time.

\*        \*        \*        \*        \*        \*        \*

X Q. Then you wouldn't know what size motor would be required to operate this machine, would you?—A. Only what the manufacturer recommends.

\*        \*        \*        \*        \*        \*        \*

By Judge DALLINGER.

Q. Did you see machines run one time by an electric motor and then by a turbine such as shown on your catalog?—A. Yes, several times, Your Honor, in England.

\*        \*        \*        \*        \*        \*        \*

By Mrs. BENNETT.

\*        \*        \*        \*        \*        \*        \*

X Q. Based upon your experience, and I believe you stated you were an engineer, is an electric motor necessary to operate an air compressor?—A. Not necessarily, an electr c motor or steam engine.

\*        \*        \*        \*        \*        \*        \*

X Q. Where would you get the compressed air; how would you get the compressed air?—A. How do you get the compressed ai · to the machine?

X Q Yes.—A. From a compressor.

X Q. In order to operate the air turbine motor?—A. Yes.

X Q. What would you mean by a compressor?—A. A machine that takes free air and compresses it.

\*        \*        \*        \*        \*        \*        \*

X Q. For a 60 horsepower motor, how large would the machine have to be that furnished the compressed air that you put into the air compressor motor that you changed?—A. I do not know at this time, I never calculated that.

\*        \*        \*        \*        \*        \*        \*

X Q. Do you know the cost of a 60 horsepower air compressor?—A. No.

On redirect examination the witness testified as follows:

R. Q. Mr. Merck, when you personally observed, as you stated several times, in England, the change of motors in such machines, how long did it take to accomplish that change?—A. To my knowledge, less than one day.

On re-cross examination the witness testified in part as follows:

R. X Q. Did you see the change being made?—A. I saw the change being made several times, but at that time I was not particularly interested.

R. X Q. And didn't you notice the size of the air compressor furnishing the air?—A. The physical size I do not know.

By Mr. TOMPKINS.

R. Q. Did you observe whether the turbine motor put in place of the electric motor was of the same size or a different size?—A. The same size.

By Mrs. Bennett.

R. X Q. But you did not see the air compressor which furnished the air upon which the turbine motor operated?—A. No, because the company had a central supply of compressed air.

At the close of the hearing, on motion of counsel for the Government the case was transferred to the New York docket, and on November 10, 1941, before the Second Division, the case was submitted by both sides, and time allowed counsel for briefs.

Upon this record we find the following facts:

1. The merchandise at bar consists of certain so-called coal cutter machines, each containing a 60-horsepower electric motor.

2. The said machines are designed and equipped to be operated by said electric motor.

3. In order to change the motive power of the imported machines it is necessary to remove the electric motor and in lieu thereof install an air turbine motor of the same size; otherwise the mechanical parts of said machines are identical.

4. To effect this change of power, at least 1 day's labor is necessary, and the record does not disclose the cost thereof.

Upon this record, counsel for the plaintiff in their briefs filed herein contend that said coal cutter machines are properly dutiable under paragraph 372 of the Tariff Act of 1930 as machines not specially provided for, and cite in support of that contention the decision in *Ralph C. Coxhead Corp.* v. *United States*, 22 C. C. P. A. 96, T. D. 47080, and numerous subsequent decisions in which this court and the appellate court have held certain machines to be properly classifiable under said paragraph 372 as machines not specially provided for rather than under paragraph 353 of said act as articles having as an essential feature an electrical element or device.

We do not, however, agree with this contention. While it is true that in the case of *Ralph C. Coxhead Corp.* v. *United States, supra,* the appellate court did remand the case to this court in order that the importer might be enabled "to prove whether or not the machine [a calculating machine] involved was designed and constructed to be used interchangeably by both hand power and electrical power in the sense that is indicated in our views hereinbefore expressed," nevertheless, the court in its decision, among other things, said:

In the court below, the Government took the position that the calculating machine at bar should be classified under paragraph 353 since, as imported, it contained an electric motor. It is true that counsel representing the Government also stated that if the machine were to be operated in any other way than by electric motor, certain modifications would be required. *We cannot read out of the provision the term "having as an essential feature" and we must give it some effect.* We think Congress, by that term, meant that the motor or the electrical feature of the article must be essential to the operation of the article and that if the article was so designed and constructed that it could normally operate in two ways, both by electrical power and by hand power, interchangeably, it would not be an

electrical article and the electrical element or device would not be an *essential* *element or device.* If, however, the article was so designed and constructed as to be operated normally by means of the electrical element, the fact that it might be operated by hand in emergencies or at such times as when the motor would be broken or out of repair, would, in our opinion, not destroy its inherent electrical character and remove it from the paragraph. The motor would not be an essential element of a calculating machine if the machine as imported was so designed and constructed that it might, *without substantial modification*, be interchangeably operated by hand or by electrical power. [Italics ours.]

If the only evidence before us was the first testimony given by the plaintiff's witness to the effect that the machines at bar were designed to be operated interchangeably by either the electric motor or a compressed air motor, and that all that was required to enable the said machines, after importation, to be operated by a compressed air motor was simply to lift out the electric motor and substitute therefor the compressed air motor, we would be inclined to decide this case in favor of the importer's contention. However, it subsequently developed that the witness in question had never seen such change made in this country, although he has seen the change made in England where he said it would require a day to make the change. Moreover, he was unable to state the cost of making such change.

We do not believe that the plaintiff has met the burden of proving that the machines at bar were not properly classified by the collector under said paragraph 353. All claims are therefore overruled and the decision of the collector in each instance is affirmed. Judgment will be rendered accordingly.